1840.

Jarvis and another
*v.*
Peck and others.

———◆———

## JARVIS AND LOBDELL *v.* PECK AND OTHERS.

An agreement was made containing a covenant restraining the carrying on of a trade generally, and which was clearly illegal. It also contained a covenant to keep secret the skill and mode of converting cast iron into malleable iron, which was held valid.

*Held,* that where an agreement is made upon several expressed considerations, one of which, if it stood alone, would have supported it, the union with an illegal consideration shall not destroy it. But if one of the considerations is in violation of a positive statute, or *malum in se,* the whole contract fails. The cases upon this subject examined.

*Mr. Stevens,* for complainants.

*Mr. Dean,* for defendants.

THE ASSISTANT VICE-CHANCELLOR :—I do not think any reasonable doubt can exist as to the identity of the bond and mortgage sought to be foreclosed with that given upon the consideration mentioned in the instrument of the 14th of March, 1836. That instrument and its covenants formed the consideration of such bond and mortgage, and its legality must decide the right to enforce these securities.

The bond and mortgage in question are dated the 11th of March, 1836, conditioned for the payment of $2000 on the 12th of February, 1837. The bond is executed by the defendants Peck and Gunn, and the mortgage by Peck and wife. The instrument referred to, dated the 14th of March, 1836, is executed by Jarvis the complain-

June 16, 17.

aat, and by Tremain from whom Lobdel, the other complainant, purchased. It is admitted to have been delivered at the same time as the bond. By that, Jarvis and Tremain bind themselves to Daniel Gunn and Woodbury Kemble in the penalty of $100,000. And the condition recites that Kemble had been instrumental in making Jarvis and Tremain acquainted with the skill of converting cast iron into malleable iron, and they have been of late concerned in business together as partners, which had been dissolved ; *by reason and in consideration whereof* they, Kemble and Gunn, had secured the said Jarvis and Tremain the sum of $2000 by bond and mortgage, given by George Peck and Lorinda his wife, dated the 11th of March, 1836 ; *in consideration whereof* the said Jarvis and Tremain are bound not to carry on said business themselves, nor by their agents in any place whatever, nor work at such business themselves without consent; and are also bound not to make known said skill to any other person or persons whomsoever, neither directly nor indirectly.

The defendants insist in their answer, that the consideration of the bond and mortgage was neither the $2000, nor any other sum of money or property, but solely their bond or agreement executed by Jarvis and Tremain. Upon this supposition the case has been argued; and I shall first examine it upon that ground. Another view will be afterwards presented.

It will be more simple to consider the case as if the bond executed by Peck and Gunn, and the accompanying mortgage had recited, that the consideration was the execution of this instrument by Jarvis and Tremain. And the considerations of this instrument are—first, the obligation not to carry on the same business—and next, the obligation not to reveal the secret of the skill imparted by Woodbury. In other words, these covenants form the consideration of the bond and mortgage.

The covenant for the restriction of the trade was very properly given up as invalid. See *Ross* v. *Sadgbeer*, 21 *Wendell*, 166. *Chappel* v. *Brockway*, ibid. 157. The

questions remaining are—first, whether the covenant to keep secret the skill and mode of converting cast iron into malleable iron, is a valid one, so that, if it stood alone it would form a good consideration for a contract; and next, if valid in itself, whether its being coupled with an illegal covenant vitiates the security.

The first point is settled by the cases of *Byson* v. *Whitehead,* 1 *Simon & Stuart,* 74, and *Green* v. *Tolgham, ibid,* 398, showing that such an agreement is valid.

As to the second point, the case is by no means clear. In *Remson* v. *Cole,* 8 *East.* 236, Lawrence J. speaks of the case of sheriffs' bonds, which are only authorized to be taken with a certain condition, and therefore if they be taken on any other condition, they are void *in toto,* and cannot stand good in part only ; but that does not apply to different and independent covenants in the same instrument, which may be good in part and bad in part. The case was this : a bill of sale for transferring a ship by way of mortgage, was void for want of reciting the certificate of registry as required by a statute. There was, however, a personal covenant in the instrument to pay the money, and upon this an action was sustained.

So, in *Morrys* v.*Leake,* 8 *T. R.* 411, a rector had granted an annuity out of his benefice which by a statute was void ; the 13th of Elizabeth, c. 20, declaring that all chargings of benefices with any pension out of the same shall be utterly void. There was however, a personal covenant to pay the amount upon which he was held liable. In *Newman* v. *Newman,* 4 *Maule & Selwyn,* 66, a bond was given to pay money to the obligee on a conveyance of an estate to be made, and to present on the next avoidance of a church. It was assumed that the latter part was void as a simoniacal contract, but that the bond was good for the money consideration, and the defendant having demurred, judgment was given against him.

In this case, H. N., the obligee, was to convey the estate to the obligor, who bound himself to pay the money consideration, and to make the presentation which was taken to be illegal. The decision relieved him from ful-

filling part of his engagement, but compelled him to perform the rest. It would have been a different case, and analagous to the present, if the obligee had given an accompanying bond to convey the estate, and that was sought to be enforced.

In *Yale* v. *The King*, (2 *Br. P. C.* 381,) the rule is thus expressed: That where the condition of a bond is entire, and the whole unlawful, it is in most cases void. Yet it is a known and allowed distinction, that where the condition consists of several different parts, and some of them are lawful, or such for which the bond might well be taken, and the others not, it is good for so much as is lawful, and void for the rest.

In *Norton* v. *Simmes*, (*Hobart*, 14,) the bond was in £100, conditioned for the performance of covenants, and these appear to have been contained in another instrument executed by Chamberlaine. One covenant was, that he, as under sheriff, would save the obligee, the sheriff, harmless from all escape of prisoners arrested by him; another, that he would not execute any execution for any sum above twenty pounds, without the special warrant of Norton, the sheriff. This latter covenant was held void as against law and justice. But the bond was still held good, for the rest of the covenants were agreeable to law—and the distinction was taken where part of the condition of a bond was void by statute, and where by common law—"for the common law doth divide according to "common reason; and having made that void that is "against law, lets the rest stand."

So, in *Chesman* v. *Nixby*, (*Strange*, 739, 2 *Lord Raymond*, 1456,) a bond was conditioned to do two things, one of which was illegal, and the other valid, and the breach assigned was upon the valid covenant and supported. (See also 3 *Br. P. C.* 349.)

Upon the distinction between bonds void in part under a statute, and at common law, *Colshill's case*, (3 *Coke*, 82,) is instructive. In debt on bond, it appeared that Colshill, the testator, had the office of the queen's customer, and by indenture between him and Smith, for £600 paid, and £100

to be paid annually during Colshill's life, made a deputation of the office to Smith, and covenanted that if he, Colshill, should die first, that his executors should repay him £300. The breach was for non-payment of the £300, as Smith survived Colshill. But although the covenant to repay the £300 was lawful, yet as the rest of the covenants were against the statute of 5 Edward VI., cap. 16, and if the addition of a lawful covenant should make the obligation of force as to that, the statute would serve for little or no purpose, it was adjudged that the obligation was utterly void. And the case of *Burt* v. *Place*, (6 *Cowen's Rep.* 481,) is also strong. Land had there been conveyed for the consideration expressed of $300—a small part of the price, $10, was paid down. The residue was to be paid in specific articles, except $50, which was to be retained by the vendee as a compensation for aiding the seller in a suit then proceeding. He aided in the suit, and was not licensed. He afterwards sold and conveyed the land. The action was for the value of the land, or the money which the defendant had received for it. Savage, Chief Justice. Maintenance being prohibited by statute, and a part of the consideration being therefore illegal, this was sufficient to vitiate the contract. It was held that the money paid could not be recovered back.

In *Greenwood* v. *The Bishop of London*, (5 *Taunton*, 727,) a sale of an advowson had been agreed upon, including a right to the presentation upon the next avoidance of the living. The deeds had been delivered, and the consideration paid. When the avoidance occurred the crown presented upon the ground that the sale of the next presentation was simoniacal and void. When a right to present again took place the heir at law of the vendor interfered with the right of the vendee, and sued out a *quare impedit* to try the question, alleging the illegality of the sale. But it was held that upon such a transaction, only the right to the first presentation after the sale was simoniacal and void. Counsel in arguing observe, that if the whole price was yet unpaid, the vendor might have difficulty in suing for the consideration, and say how much

was for the legal and how much was for the illegal part of the contract; but here the vendor had received all that he contracted for, and more than the law would have given him. And Chief Justice Gibbs observed, we are not called upon to decide whether the contract itself could have been in any way enforced, which would be a very different question, but whether a conveyance made in execution of it can be supported to any and what extent.

He then states that the conveyance purported to carry the whole advowson, including the next presentation. The contract is assumed to be simoniacal; but the charge of simony can be applied to the next presentation only. A vacancy has taken place and the crown has presented, because the conveyance was considered to be so far void. But here the illegal part of the transaction ended. It is true that by the contract one entire consideration is to be paid for the whole advowson, and we cannot say how much should be referred to the legal, and how much to the illegal part of the transaction; but we are sure that our decision supports so much only of the conveyance as applies to the legal part. The rest has been dealt with as illegal; the crown has taken the forfeiture.

In *Brown's Ad.* v. *Langford's Ad.*, (3 *Bibb*, 497,) articles had been entered into for the payment of an annuity of $100 to a woman in consideration of services, and for the use of certain slaves and other property specified. One of the pleas alleged that the services were for living and cohabiting with the party as his concubine, her husband being alive. The court held that as part of the consideration was vicious and unlawful, the whole agreement was void.

In *Yundt* v. *Roberts*, (5 *Serg. & Rawle*, 139,) where a note was given for a tavern reckoning, which exceeding twenty shillings was void by statute, and for other items of account, it was held good as to the latter, though void as to the former. The court then, however, say—If the contract is entire, and founded on two considerations, one of which is unlawful, that vitiates the whole. The cases cited are where the contract was void by statute.

In *Sylvester* v. *Girard*, (4 *Rawle*, 187,) the question was started, but not arising properly was not decided by the court. The judge at the trial expressed an opinion that the illegality of part of the consideration contaminated the instrument. The illegality was that it was given in part for a purchase of lottery tickets prohibited by statute to be sold within the state. See also *Martin* v. *Rice*, (2 *Browne's Rep.* 191.)

It is remarkable that through the numerous cases which I have thus stated, and many of a similar character which I have looked into, I find so little directly in point. And the question must be determined upon some principle suggested by the cases since it is not controlled by them.

It might be urged that the payment by Peck and Gunn, of the sum of $1,000 by their agent S. F. Gunn, upon the bond and mortgage, should be treated as applicable to the illegal part of the consideration, leaving the remaining $1,000 appropriate to the part which was valid. And it is clear that this $1,000 is irreclaimable. Still this would be an arbitrary appropriation. The payment was made no doubt on the supposition of the entire validity of the bond, and the parties as to the balance should not stand in a worse situation than they did before.

Again, it may be insisted upon that the consideration of keeping the skill and knowledge secret, was of great importance, as the party had been required to take an oath when he entered into partnership, not to divulge it.

But a course of reasoning, though somewhat artificial, has struck me as entitled to more weight. The illegal part of the consideration was no consideration. And the law may perhaps assume that as the parties are constructively chargeable with a knowledge of the illegality, so they are to be assumed as not being influenced by it. That where there is an illegal consideration for a grant or agreement, it cannot be supported because there is no consideration. But where there are two considerations expressed, one valid and the other not so, the latter is to be rejected, because it is not to be considered that what is unlawful could influence the contracting party.

Without relying, however, upon an argument perhaps too technical, my conclusion is, that where it is evident that an agreement has been made upon considerations, one of which, if it stood alone, would have supported the contract, its union with an invalid one shall not destroy it. We must adopt one or the other rule; either that what is unlawful vitiates the good, or that the lawful remedies the bad. There can be, in the great mass of cases, no mode of measuring the different considerations; no scale, where the contract is for the payment of money, of apportioning the demand. With the exception thoroughly established by the cases, where the contract contains a provision violating a positive statute, and with another exception where it is for an act *malum in se,* I consider the conclusion I have arrived at, most consonant to the principles of justice—best adapted to the exigencies of business—and at least as consistent as an opposite doctrine, with the analogies of law.

But there is another view of the case entitled to great weight. The instrument, dated the 14th of March, recites the fact of Kemble's having instructed Jarvis and Tremain in the mystery of the business. Now this is a reason for the bond the latter entered into, viz: to keep it secret. Then it recites the partnership, and "*that the said firm* " *has been lately dissolved by reason and in consideration* " *whereof,* they, Kemble & Gunn, have secured the said " Jarvis & Tremain the sum of $2000 by bond and "mortgage, &c.," in consideration whereof the said Jarvis & Tremain are bound not to carry on the business, &c.

Thus the true import of the whole transaction may be, that the bond and mortgage was given in consideration of the dissolution of the partnership; a relinquishment of an interest and rights certainly on its face sufficient to support a sealed instrument. And then that in consideration of this bond and mortgage, thus given upon a fair and lawful consideration, and in itself unimpeachable, the other parties enter into the particular covenants. Now if these covenants were all unlawful, and the bond given to enforce them palpably void, the bond and mortgage could

not be affected, because that was founded upon a good con-
sideration, irrespective and independent of the void agree-
ment.    I consider this view as of itself sufficient to decide
the cause.

The decree must declare the validity of the bond and
mortgage, and that it is a lien upon the premises for the
amount now due upon it.    A reference to a master to
compute the amount due.